# Taylor & Byers *vs* Daniel.

### ERROR TO THE GRANT CIRCUIT.

*Assignee and assignor. Diligence.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

THIS action of assumpsit was brought by Taylor & Byers, assignees, against Daniel, as the assignor of a note executed by Green White, whose administrators were prosecuted to a judgment and return of "*nulla bona*," and the only question necessary to be stated is, whether due diligence had been used in taking out execution on the judgment against said administrators.

It appears that twenty three days had elapsed after the rendition of the judgment, before the execution issued, which shows a delay of ten days after the execution might, by law, have been taken out. It was

ASSUMPSIT.

*Case* 19.

*December* 28.

Case stated.

*A failure to sue out execution by an assignee for ten days after it might have issued, the Clerk be-*

TAYLOR & BYERS
sa
DANIEL.

ing absent, held
to be no forfeit-
ure of the re-
course of assign-
ee against the
assignor.

proved by the attorney, who had obtained the judg-
ment, that he had given general instructions to the
Clerk to issue executions on all judgments obtained by
him, as soon as they should be due, unless otherwise
directed, and that he had not given any counter direc-.
tions in this case, nor any special direction about the
execution. The Clerk of the Court stated that it was
his practice to issue executions on all judgments as soon
as they were due, but that immediately after the expi-
ration of the term at which this judgment was render-
ed, he was called away on important business, and left
before he had time to tax costs and issue executions,
which, however, he did immediately on his return, and
that the execution of the plaintiffs issued about the same
time with other executions of the term. He further
stated, that on going away as above, he left a deputy to
keep the office open and do such business as might be
required; that his deputy had little experience, and he
had not trusted him to tax costs and issue executions,
but that he knew how to tax costs, and would probably
have issued the execution in this case, if called on to do
so. The plaintiffs also offered to prove that the estate
of Green White was insolvent at, and after the date of
the judgment and execution against his administrators,
but this evidence was rejected on the ground that the
same facts were proved by the record.

In the case of *Bard* vs *McElroy's adm'r.* (6 *B. Mon-
roe*, 416,) a delay in issuing the execution for seven days
after it might, by law, have been issued, being wholly
unaccounted for, was held to evince a want of due dili-
gence, which should preclude a recovery against the
assignor. But on the return of the cause, the plaintiff
introduced evidence tending to account for the delay
and to show that the usual steps had been taken for
causing execution to issue when due, and that the exe-
cution had, in fact, issued as early as others of the same
term. And on this evidence a judgment for the plain-
tiff was affirmed at the present term; (*Manuscript
opinion.*) In the case of *Clarke* vs *Prentice, &c.,* (3 *B.
Monroe*, 584,) a much longer delay than that which oc-

curred in the present case, was held to have been sufficiently accounted for.

It never has been held that the assignee was bound to use all possible diligence in his remedy against the obligor, but only such diligence as a man of ordinary prudence would use in the collection of his own debt. What this diligence may be, does not admit of an exact and inflexible definition with· respect to the time of issuing the execution. If the circumstances are such as indicate that extraordinary activity in this matter would avail to secure the debt or any material part of it, extraordinary activity would in that case be but ordinary diligence. Whereas, if the most active steps would be alike unavailing with the most dilatory, the pursuit of the usual steps in the usual time and manner, should be deemed ordinary diligence.

It never has been held that the assignee was bound to use all possible diligence in pursuing the obligor to preserve his recourse against the assignor—but only such diligence as a man of ordinary prudence would use in the collection of his own debt.

The object of the proceeding in such a case, is to furnish the proper technical evidence of the insolvency of the obligor—that is, to show by the record that the debt could not be made by the use of such diligence as men of ordinary prudence use· in their own affairs of like nature. And in the absence of any evidence going to show that extraordinary measures ·would have been useful in coercing the debt, and certainly when it appears that such measures would be fruitless, it would seem that the pursuit of the same steps which are ordinarily taken in the coercion of judgments, would be ordinary diligence. This rule is indicated in the close of the opinion in the case of *Bard* vs *McElroy's adm'r.* (*supra.*) And tested by this rule, we are of opinion that the evidence in this case shows such diligence as authorized a recovery by. the plaintiffs, and especially if it be assumed, (as the plaintiffs offered to prove,) that the estate of the obligor was insolvent at the datè of the judgment and èxecution, which evidence should, on another trial, be admitted.

What was ordinary. diligence in one case, might not be in another—the circumstances of the def't in the execution, and the prospect of making the money be diligence ought to be considered.

We need only add, that the Sheriff's return, that "no assets were found in the hands of the administrators," &c., was sufficient to prove the insolvency of the estate while the execution was in his hands. Such a return implies an application to the administrators to satisfy

the execution, or a knowledge that they had not the means.

Wherefore, the judgment is reversed, and the cause is remanded for a new trial in conformity with this opinion.

*Herndon* for plaintiffs; *O'Hara* for defendant.